(114 So. 650)

No. 28332.

## DENNY v. JEFFERSON CONST. CO., Inc.

July 11, 1927. Rehearing Refused Oct. 31, 1927.

*(Syllabus by Editorial Staff.)*

1. Appeal and error ⬤═➤492—Registry of judgment on same day as suspensive appeal from dissolution of injunction against execution held not to create judicial mortgage during pendency of appeal.

Registry in mortgage office of judgment, making foreign judgment executory, execution of which had been enjoined, on same day as taking suspensive appeal from judgment dissolving injunction, was null and void, and did not create judicial mortgage on judgment debtors during pendency of such appeal.

2. Appeal and error ⬤═➤492, 1145—Registry of judgment, dormant during suspensive appeal, held revivified after judgment affirming dissolution of injunction restraining enforcement became final.

Judicial mortgage, resulting from premature and illegal registry in mortgage office of judgment making foreign judgment executory after suit to enjoin execution. and on same day when suspensive appeal from dissolution of injunction was taken, remained dormant during pendency of suspensive appeal, but was revivified with all legal effect when judgment on appeal affirming dissolution of injunction became final and parties acquiring rights to judgment debtor's realty subsequent to finality of judgment on appeal would do so subject to recorded judgment.

3. Appeal and error ⬤═➤492—Judgment registered before or after suspensive appeal held not effective as judicial mortgage against third parties during such appeal.

Judgment recorded in mortgage book before or after suspensive appeal therefrom is ineffective as creating judicial mortgage during pendency of suspensive appeal as against third parties who acquired rights to property of judgment debtor pending appeal and before final judgment.

O'Niell, C. J., dissenting.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Judge, acting for M. M. Boatner, Judge.

Proceeding between F. Otway Denny and the Jefferson Construction Company, Inc. On a rule by the Sheriff on creditors of the Jefferson Construction Company to show cause why certain mortgages and liens should not be canceled and the creditors referred to the proceeds of a sale of certain property and that the proceeds be distributed among the creditors according to the rank of their respective claims. From the judgment below, the First National Bank of Miami, Fla., appeals. Affirmed.

Milling, Godchaux, Saal & Milling, and Eugene D. Saunders, all of New Orleans, for appellant First Nat. Bank of Miami, Fla.

Warren V. Miller, of New Orleans, for appellee Denny.

Marcus & Cockern, of New Orleans, for appellee Marcus.

Clarence de Lucas and Hugh Morrison, both of New Orleans, for Siben.

THOMPSON, J. The First National Bank of Miami obtained a judgment in this state making executory a judgment rendered in the state of Florida against the defendant company for $2,730.45.

The judgment in this state was signed December 11, 1919. An execution was issued, or was about to be issued, when the defendant obtained an injunction on an allegation that the judgment had been paid.

The injunction in due course was dissolved with attorney's fees and interest taxed against the defendant and the surety on the injunction bond.

This judgment, together with the original judgment, was placed of record in the mortgage office on April 2, 1923, and on the same day a suspensive appeal was obtained and perfected from the judgment dissolving the injunction. There was no appeal from the original judgment. The judgment dissolving the injunction was affirmed by this court on October 5, 1926. 162 La. 47, 110 So. 84.

On April 15, 1924, the Jefferson Construc-

tion Company purchased certain real estate in this city in part payment of which the purchaser gave its several notes aggregating the sum of $12,000. The act of purchase and mortgage were recorded on the day of execution. On the same day the construction company executed a second mortgage in favor of Arthur Dumaine to secure a note for $1,500, payable six years after date.

On February 10, 1926, there was recorded against the property referred to a material and builders' lien in favor of the Hibernia Sheet Metal Works for $498.45.

Thereafter, on April 13, 1926, the construction company executed a third mortgage on the property in favor of Walter F. Marcus to secure a demand note payable to his own order for $8,500.

In June, 1926, the mortgaged property was sold in foreclosure of the mortgage and vendor's privilege securing the notes given as part of the purchase price. The balance due on said purchase price was $9,116.48.

The property was sold for $13,500.

Thereupon the sheriff took a rule on the creditors herein named, and certain other creditors who held mortgages on the property recorded subsequent to those mentioned, to show cause why all of such mortgages and liens should not be canceled and the several creditors referred to the proceeds of the sale and that the proceeds be distributed among the creditors according to the rank of their respective claims.

On a trial of that rule, the balance due on the purchase price of the property represented by notes held by the plaintiff, the lien in favor of the Hibernia Sheet Metal Works, the mortgage in favor of Dumaine for $1,500, and the one in favor of Walter F. Marcus for $8,500, were recognized as superior in rank to the judgment in favor of the Miami bank.

As the proceeds of the sale were insufficient to pay all of the claims mentioned, the bank obtained nothing on its judgment, and hence this appeal.

It is conceded that the amount due on the material lien and the balance due on the purchase price of the property were properly ranked as superior to the judicial mortgage of the Miami bank.

The contest is over the balance of the proceeds of sale, and is between the said bank and the holders of the mortgage notes for $1,500 and $8,500.

It is to be observed that the purchase of the property by the construction company, the recordation of the material lien, the execution and recordation of the two last-mentioned conventional mortgages, were all subsequent in date to the recordation of the judgment in favor of the bank against the construction company in the mortgage book.

It is likewise to be observed that the sale of the property under foreclosure proceedings and the judgment ranking the various claims and ordering a distribution of the proceeds of the sale, took place during the pendency in this court of the suspensive appeal from the judgment dissolving the injunction and before that judgment was affirmed by this court.

It will be seen from the foregoing statement of facts that the question presented is, not whether a judicial mortgage takes precedence over an ordinary conventional mortgage recorded subsequent to the recordation of the judicial mortgage, for that goes without saying, but whether any judicial mortgage results at all to the prejudice of third parties, from a judgment recorded in the mortgage office during the pendency of a suspensive appeal.

It is contended on the part of the appellees that the record of the judgment of the bank was in violation of the injunction which had been maintained in force by the suspensive appeal, and that such recordation did not and could not have the effect of creating

a judicial mortgage on the property against the parties acquiring the rights on the property during the suspensive appeal.

The precise question here presented has never been directly passed upon by this court so far as we are advised.

In the case of Dannenmann & Charlton v. Charlton, 113 La. 283, 36 So. 968, the judgment appealed from was recorded after a suspensive appeal had been perfected, and on rule the recordation was ordered canceled.

In that case the court said:

"While judicial mortgages may be inscribed, as heretofore, in the office of the recorder of mortgages, prior to the suspensive appeal, the effect of such inscription prior to such an appeal is left open for future consideration, should the question come before us.

"An inscription of a judgment after a suspensive appeal has been taken and perfected trenches upon the suspensive appeal and the jurisdiction of this court, which requires that everything in the case should remain in abeyance from the time the suspensive appeal has been taken."

The question came before the court again in Cluseau v. Wagner, 126 La. 375, 52 So. 547, in which the inscription of the judgment had been made before the suspensive appeal was perfected, the appeal being so perfected within ten days from date of judgment, and the court ordered the cancellation:

"If it [judgment] be inscribed, and thereafter a suspensive appeal is taken, and a valid and solvent bond is furnished, and all that is necessary has been done to secure a suspensive appeal, persons in interest can then have the inscription canceled and erased, at the cost of the judgment creditor at whose instance the judgment was recorded."

And again in Daly v. Brock, 133 La. 752, 63 So. 318, it was said, quoting from syllabus:

"Where, pending the delay for a suspensive appeal, a judgment, appealable to this court, is inscribed in the mortgage office, and the party cast thereafter appeals, the questions of his right to have the inscription canceled and of the jurisdiction of this court to order the cancellation are no longer open."

In State ex rel. Macheca v. Dunn, 148 La. 460, 87 So. 236, this court said:

"The recording of a judgment on the mortgage record, so as to create a judicial mortgage, is to that extent an execution of the judgment.

"A judgment cannot be effectively executed, even to the extent of recording it on the mortgage record, pending a suspensive appeal, or until the judgment has become final and executory.

"A suit to cancel and erase from the mortgage records the inscription or record of a judgment, on the ground that the judgment is not executory, is merely a suit to prevent, to that extent, the execution of the judgment."

In all of the cases cited and quoted from it appears that the application to have the judgment canceled was made during the pendency of the appeal, either by rule or by mandamus, and it is argued on behalf of the appellant that such a proceeding should have been taken in this case, and as it was not taken, the registry of the judgment, though prematurely made, became effective as creating a judicial mortgage.

[1] We are of the opinion, however, that the registry of the judgment was, as stated in the cases cited, an execution of the judgment, was in violation of the original injunction and the suspensive appeal, and was null and void, and had not the effect of creating a judicial mortgage during the pendency of that appeal.

The defendant construction company was not called upon to take any proceeding to cancel the registry of the judgment during the existence of the injunction against the execution of the judgment and during the suspensive appeal.

Nor were the mortgage creditors whose rights on the property came into existence during the pendency of the appeal affected by such illegal registry. The creditors were not required to contest the validity of the registry of the judgment until said judgment as a judicial mortgage was sought to be enforced against them.

The case would have been different if the appellees had only acquired their mortgages on the property after the judgment on appeal had become final.

[2] The judicial mortgage resulting from the premature and illegal registry, while remaining dormant and ineffectual during the pendency of the suspensive appeal, sprang into existence or revivified with all of its legal effect when and after the judgment on appeal became final and any parties acquiring rights on the property subsequent to the finality of the judgment on appeal would do so subject to the recorded judgment.

In this case, however, the property had been sold and the proceeds ordered distributed according to the rank of the mortgages before the judgment on appeal had been rendered.

[3] Our conclusion is that a judgment recorded in the mortgage book, whether before or after a suspensive appeal has been perfected from such judgment, can have no effect as creating a judicial mortgage during the pendency of the suspensive appeal as against third parties who may have acquired rights on the property of the judgment debtor during the pendency of the appeal and before final judgment thereon.

The case of Toledano v. Relf, 7 La. Ann. 60, is not in conflict with the ruling herein made. In that case a judgment had been rendered on a confession with stay of execution corresponding with the terms of payment stipulated in the authentic act on which the judgment was based. There was no appeal and could have been none. The execution therefore was not suspended by the effect of law but by the consent of the parties. The court under the circumstances very properly held that, notwithstanding the consent stay of execution, the registry of such a judgment operated a judicial mortgage from the date the judgment was recorded.

That was quite a different situation from the one presented here, in which the execution was suspended by law and not by consent of parties, and where the recording was made in defiance of the law and the jurisdiction and authority of the appellate court.

This view renders it unnecessary to consider other questions discussed in briefs of counsel.

Judgment affirmed.

O'NIELL, C. J. (dissenting). The majority opinion and decree in this case seems to be based upon a doctrine which is not appropriate to the facts of the case. The proposition of law is stated in the opinion and answered thus:

"It will be seen from the foregoing statement of facts that the question presented is, not whether a judicial mortgage takes precedence over an ordinary conventional mortgage recorded subsequent to the recording of the judicial mortgage, for that goes without saying, but whether any judicial mortgage results at all to the prejudice of third parties, from a judgment recorded in the mortgage office during the pendency of a suspensive appeal. * * *
"Our conclusion is that a judgment recorded in the mortgage book, whether before or after a suspensive appeal has been perfected *from such judgment*, can have no effect as creating a judicial mortgage during the pendency of the suspensive appeal as against third parties who may have acquired rights on the property of the judgment debtor during the pendency of the appeal and before final judgment thereon." (The italics are mine.)

There was no appeal from the judgment condemning the Jefferson Construction Company to pay the First National Bank of Miami $2,730.45. After the judgment had become final and exigible, the Jefferson Construction Company stopped execution of it by means of an injunction. The allegations on which the temporary and ex parte injunction was granted were that the judgment was obtained on a promissory note signed by the Jefferson Construction Company and indorsed by one Manley, that Manley had paid the note for the Jefferson Construction Company,

and that the bank had sued and obtained judgment against the Jefferson Construction Company for the use and benefit of Manley, with the purpose and intention of crediting the collection to his account. "Whereupon," said this court in the opinion rendered in that case, "plaintiff admitted (and afterwards proved) that these allegations were true." When the injunction suit was submitted to the district court for decision, the court promptly dissolved the injunction and dismissed the suit, because of the principle of law—which this court affirmed on appeal —that there is always at least an implied contract between the principal debtor and his surety that the principal debtor is obliged to reimburse the surety if the latter pays the debt. The Jefferson Construction Company took a suspensive appeal from the judgment of the district court dissolving the temporary injunction. The effect of the appeal was to keep the temporary injunction in force until this court affirmed the judgment of the district court. See First National Bank of Miami v. Jefferson Construction Co., 162 La. 47, 110 So. 84.

Meanwhile the bank's judgment against the Jefferson Construction Company for $2,730.-45, as well as the judgment dissolving the temporary injunction, was recorded in the mortgage office; and, after the judgments were recorded, the Jefferson Construction Company placed two special mortgages on record in favor of third parties. While the appeal from the judgment dissolving the temporary injunction was pending in this court the real estate belonging to the Jefferson Construction Company and affected by the bank's judicial mortgage and by the two special mortgages was seized and sold by the sheriff in the foreclosure of a first mortgage and vendor's lien, which primed the bank's judicial mortgage and the two special mortgages. The surplus of the proceeds of the sale, in the sheriff's hands, after satisfying the first mortgage and vendor's lien, was not enough to pay the bank's judicial mortgage and the two special mortgages recorded subsequent to the judicial mortgage. The question, therefore, is whether the bank's judicial mortgage should be paid in preference to the two special mortgages which were recorded after the bank's judicial mortgage was recorded,

The opinion of the majority of the members of the court seems to be that the registry of the bank's judgment for $2,730.45 was absolutely null, or without effect as a judicial mortgage, as far as third parties were concerned, until this court affirmed the judgment of the district court dissolving the temporary injunction which had been issued ex parte. And the reason for that opinion is that the recording of the bank's judgment for $2,730.-45 was a violation of the temporary mandate or injunction which the district judge had granted ex parte, and which he had afterwards revoked, but which was kept in force by an appeal to this court until the judgment dissolving the temporary injunction was affirmed. I do not subscribe to that doctrine.

It is well settled by the decisions of this court that a suspensive appeal from a judgment condemning the defendant to pay a sum of money has the effect of staying execution of the judgment, even to the extent of forbidding a recording of the judgment as a judicial mortgage, pending the appeal. If such a judgment be recorded as a judicial mortgage while a suspensive appeal taken by the defendant is yet pending, or during the time allowed him for taking a suspensive appeal, he may demand that the judicial mortgage be canceled. Dannenmann & Charlton v. Charlton, 113 La. 276, 36 So. 965; Cluseau v. Wagner, 126 La. 376, 52 So. 547; Daly v. Brock, 133 La. 752, 63 So. 318; State ex rel. Macheca v. Dunn, Recorder, 148 La. 460, 87 So. 236.

The raison d'être of that rule is that the only kind of judgment that can have the ef-

fect of a judicial mortgage is a *final* judgment for a sum of money; and a judgment which is pending on a suspensive appeal taken by the defendant is not a final judgment against him until the judgment is affirmed or the appeal dismissed. It is because of that great effect of a suspensive appeal from a judgment condemning the defendant to pay a sum of money that he is required to give an appeal bond for a sum exceeding by one-half the amount of the judgment against him, with good and solvent surety, to guarantee that he or his surety will pay whatever judgment may be finally rendered against him on appeal.

A judgment for a sum of money should not be executed, either by the issuing of a fi. fa. and levying of a seizure or by the recording of the judgment as a judicial mortgage, within the delay allowed the defendant for taking a suspensive appeal; but such a premature execution of a judgment is not null because of its being premature. It is a valid execution if the defendant does not take a suspensive appeal within the time allowed. Labarre v. Durnford, 10 Mart. (O. S.) 180, 182; Hatch v. English, 12 Rob. 135; Leggett v. Potter, 9 La. Ann. 309; Sowle v. Pollard, 14 La. Ann. 287. And so it has been held that a premature execution of a judgment of the Supreme Court "is a mere irregularity which may be corrected by an application for rehearing, timely made, and which becomes valid after the expiration of the delay." Morgan v. Whiteside, 14 La. 280; Hatch v. City Bank, 1 Rob. 497; Regan v. Washburn, 39 La. Ann. 1071, 3 So. 178.

Accordingly, if the execution of the bank's judgment against the Jefferson Construction Company for $2,730.45 had been stayed by a suspensive appeal from that judgment, on a bond for one-half more than that sum, perhaps the premature registry of the judgment in the mortgage office would not have had the effect of a judicial mortgage, as far as third parties were concerned, until and unless the judgment should have been affirmed on the appeal. But that is not the case. The execution of the judgment was not stayed or suspended by a suspensive appeal; it was forbidden by a temporary injunction, granted ex parte, after the judgment for $2,730.45 had become final and exigible. When the execution of a final judgment is stayed by a temporary injunction, issued ex parte, the effect may be merely to forbid the levying of a seizure or the issuing of a fi. fa., or it may go so far as to forbid also the recording of the judgment—depending altogether upon the language of the temporary mandate or writ of injunction, or its proper interpretation by the court that granted it. The temporary injunction, which was issued at the instance of the Jefferson Construction Company in this case, as I understand, in terms merely forbade the "execution" of the judgment. Perhaps that language would have been construed as forbidding a recording of the judgment in the mortgage office, if the Jefferson Construction Company had raised the question, before the temporary injunction was finally dissolved, by demanding that the bank be ordered to show cause why the inscription of the judgment should not be canceled, for being done in violation of the temporary injunction, and why the bank should not be adjudged guilty of contempt of court and be punished for having violated the temporary mandate of the court. But, without any such complaint being made by the Jefferson Construction Company, at whose instance alone the temporary injunction was issued, the registry of the judgment as a judicial mortgage was not null or without effect as to third parties. They (the two third persons who took special mortgages on the Jefferson Construction Company's property after the bank's judgment was recorded) had no right to contend that the recording of the bank's mortgage was a violation of the temporary

injunction which had been issued, not at their instance, but at the instance of the Jefferson Construction Company. That was a matter concerning only the Jefferson Construction Company, and the dignity of the court which had issued the temporary injunction, and the dignity of this court while the injunction suit was pending on appeal, but only so long as the temporary injunction was in force. It is not at all certain that either the district court or this court would have ordered the bank's judgment canceled from the mortgage records, or would have deemed the recording of the judgment a violation of the temporary injunction, or would have adjudged the bank guilty of contempt of court for recording the judgment while the injunction against its "execution" was in force, if the Jefferson Construction Company had complained before the temporary injunction was finally dissolved.

For these reasons, I respectfully dissent from the opinion and decree rendered in this case.